**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ASHLEY HOWLAND, individually, and on behalf of P.H., a minor,<br><br>Plaintiffs,<br>vs.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION, *et al.*,<br><br>Defendants. | Case No.: 2:25-cv-02078-GMN-EJY<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss, (ECF No. 10), filed by Plaintiffs Ashley Howland, on her own behalf and that of her minor daughter, P.H. Defendant Garrison Property and Casualty Insurance Company ("Garrison") filed a Response, (ECF No. 11), to which Plaintiffs filed a Reply, (ECF No. 12). Further pending before the Court is the Motion for Order to Show Cause, (ECF No. 18), filed by Plaintiffs. Defendant Garrison filed a Response, (ECF No. 22), to which Plaintiffs filed a Reply, (ECF No. 24). Finally pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 19), filed by Plaintiffs.[1] Defendant Garrison filed a Response, (ECF No. 23), to which Plaintiffs filed a Reply, (ECF No. 25).

For the reasons discussed below, the Court GRANTS Plaintiffs' Motion to Dismiss, and DENIES Plaintiffs' Motion for Order to Show Cause and Motion for Partial Summary Judgment.

///

///

[1] Plaintiffs' Motion for Order to Show Cause, (ECF No. 18), and Motion for Partial Summary Judgment, (ECF No. 19), are identical, with each seeking both forms of relief in the alternative. (*See generally* Mot. Order Show Cause, ECF No. 18); (Mot. Partial Summ. J., ECF No. 19). For convenience, the Court herein refers to ECF No. 18 as the Motion for Order to Show Cause, and ECF No. 19 as the Motion for Partial Summary Judgment.

# I. BACKGROUND

This case arises from an insurance coverage dispute between Plaintiffs and their insurer, Defendant Garrison. (*See generally* Compl., ECF No. 1). Sometime in 2023, Garrison issued an automobile insurance policy to Plaintiff Ashley Howland, assigning policy number 01521 70 26 7101 2 (the "Policy"). (Compl. ¶ 19); (Ans. ¶ 19, ECF No. 8); (Policy, Ex. 6 to Mot. Partial Summ. J., ECF No. 18-6). The Policy included stackable uninsured/underinsured motorist ("UM/UIM") coverages, each in the amount of $100,000/$300,000. (Compl. ¶ 19).

## A. The Accident

On or about May 11, 2023, Ashley, while pregnant with P.H., was involved in a motor vehicle accident with third-party tortfeasor Manuel Sanchez. (*Id.* ¶ 8). As a result of the accident, Ashley's vehicle collided with the median retaining wall, causing injuries to both herself and to P.H. (*Id.*). The next day, Plaintiffs' counsel sent a letter to Garrison informing it of the accident, requesting immediate reservation of applicable UM/UIM policy limits and Medpay coverages, advising Garrison to commence an immediate investigation of all existing and foreseeable claims, and requesting that all communications be directed towards counsel rather than to Plaintiffs directly. (*Id.* ¶ 20). Plaintiffs allege that Garrison took no action to investigate or tender payment. (*Id.* ¶ 21). Plaintiffs further allege that they thereafter sent photographs of the accident, the Accident Exchange Sheet which identified Sanchez as an uninsured driver, and Ashley's medical records to Garrison. (*Id.* ¶ 22). Plaintiffs allege that despite receiving a written acknowledgment of receipt from Garrison, it did not conduct any further investigation. (*Id.* ¶ 23).

On June 2, 2023, Garrison contacted Ashley regarding her claim, attaching a copy of the Policy. (Mot. Partial Summ. J. 5:1–2). Later, on June 8, 2023, Garrison again contacted Ashley directly to inform her that her claim was unresolved "pending review of all documents for payment." (Mot. Partial Summ. J. 5:2–4); (Garrison Update, Ex. 7 to Mot. Partial Summ. J.,

ECF No. 19-7).

**B. The State Court Litigation**

Thereafter, on June 20, 2023, Ashley and P.H. commenced Case No. A-23-872614-C, in the Eighth Judicial District Court (the "State Court") against Sanchez seeking damages for the injuries they sustained in the May 11 accident. (*See generally* State Ct. Compl., Ex. D to Resp. Mot. Partial Summ. J., ECF No. 22-2). After Sanchez failed to appear in the case, default was entered against him on August 8, 2023. (Entry of Default, Case No. A-23-872614-C, ECF No. 5).[2] On September 18, 2023,[3] Plaintiffs' counsel notified Garrison of the lawsuit, providing the Civil Cover Sheet, case number, department number, Sanchez's name and address, and the case filing type. (Mot. Partial Summ. J. 6:2–5); (*see* Sept. 18 Status Update at 2–3, Ex. 16 to Mot. Partial Summ. J., ECF No. 19-16).

A back-and-forth regarding the status of Plaintiffs' state court case followed. Garrison alleges that on October 10, 2023, it contacted Plaintiffs' counsel inquiring about the status of the litigation and was informed that a default had been entered against Sanchez. (Madrid Decl. ¶ 9, Ex. 2 to Resp. Mot. Partial Summ. J., ECF No. 23-2). Garrison further alleges that on October 13, 2023, it again contacted Plaintiffs' counsel seeking a copy of the state court complaint and asking whether default judgment had yet been entered. (*Id.* ¶ 10). Garrison asserts that Plaintiffs' counsel did not respond to that request. (*Id.*). Garrison further alleges that it requested an update on the status of default judgment in the state court case on November 21, 2023, January 19, 2024, and February 13, 2024. (*Id.* ¶¶ 11–13). On February 22, 2024, Plaintiffs' counsel advised Garrison that Sanchez had been served in the state court case and explained that they were waiting to hear from Sanchez's attorney. (Feb. 22 Email at 1–2,

---

[2] The Court takes judicial notice of the state court's docket. Fed. R. Evid. 201(b); *see Porter v. Ollison*, 620 F.3d 952, 955 n.1 (9th Cir. 2010) (citing *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006)).

[3] Garrison contends that it was first notified of Plaintiffs' litigation against Sanchez on September 20, 2023. (Madrid Decl. ¶ 7, Ex. 2 to Resp. Mot. Partial Summ. J., ECF No. 23-2). The fax Plaintiffs' counsel sent to Garrison is dated September 18, 2023. (*See* Sept. 18 Status Update at 1–2, Ex. 16 to Mot. Partial Summ. J.).

Ex. 19 to Mot. Partial Summ. J., ECF No. 19-19). Garrison did not intervene in the state court case. (Resp. Partial Mot. Summ. J. 2:2).

The state court entered a default judgment against Sanchez for a total amount of $3,388,816.90 on May 16, 2024. (Default J., Ex. 1 to Mot. Partial Summ. J., ECF No. 19-1). Specifically, the default judgment determined Ashley's past medical damages to be $75,043, future medical damages to be $1,016,000, and P.H.'s damages for past pain and suffering to be $75,000. (*Id.* at 1). Plaintiffs provided the default judgment to Garrison on January 9, 2025, and demanded full payment of the total damages amount awarded. (Jan. 9 Email at 2, Ex. 22 to Mot. Partial Summ. J., ECF No. 19-22). Thereafter, on January 16, 2025, Garrison offered to settle Plaintiffs' claim for $100,000, an amount equal to the uninsured motorist bodily injury coverage limit under the Policy. (Jan. 16 Offer, Ex. 23 to Mot. Partial Summ. J., ECF No. 19-23). Plaintiffs' counsel rejected that claim, demanding payment of the damages amount awarded by the default judgment in full. (Jan. 23 Email at 1–2, Ex. 25 to Partial Mot. Summ. J., ECF No. 19-25).

Later, in April 2025, Garrison tendered payment of the following: (1) the $100,000 per person policy limit of UM bodily injury limits to Ashley, (2) the $75,000 awarded to P.H. in past pain and suffering damages plus pre-judgment interest, and (3) the $75,043 in past medical damages to Ashley. (Apr. 7 Email at 4, Ex. 6 to Resp. Mot. Partial Summ. J., ECF No. 23-6); (Apr. 23 Email at 2, Ex. 7 to Resp. Mot. Partial Summ. J., ECF No. 23-7). In making those payments, Garrison reserved all rights and defenses under the Policy. (Apr. 7 Email at 4, Ex. 6 to Resp. Mot. Partial Summ. J.); (Apr. 23 Email at 23, Ex. 7 to Resp. Mot. Partial Summ. J.). On May 19, 2025, Plaintiffs' counsel asked Garrison whether those payments could be negotiated without condition, and Garrison allegedly did not respond. (May 19 Email, Ex. 29 to Mot. Partial Summ. J., ECF No. 19-29). Plaintiffs further allege that only after it informed Garrison of their intent to initiate this action did Garrison confirm that the above payments

could be negotiated without condition. (Mot. Partial Summ. J. 7:20–8:8).

**C. Medical Payments**

Throughout this time, Garrison and Plaintiffs' counsel conferred extensively about medical payments owed to Plaintiffs. Communication between the parties regarding medical expenses began on July 24, 2023, when Plaintiffs' counsel provided Ashley's updated medical records detailing $19,400 in medical bills to Garrison. (Mot. Partial Summ. J. 5:4–6); (*see generally* July 24 Email, Ex. 8 to Mot. Partial Summ. J., ECF No. 19-8). From July 2023 to January 2026, Garrison sent a series of Explanation of Reimbursement ("EOR") documents to Plaintiffs' counsel reflecting the following reimbursements for medical expenses incurred by Ashley Howland:

- $0.00 of reimbursement against $1,888 billed to Henderson Hospital Emergency Room. (First Henderson EOR at 1, Ex. 9 to Mot. Partial Summ. J., ECF No. 19-9).[4]
- $200.12 of reimbursement against 1,000 billed to Nevada Pain Care. (Nevada Pain Care EOR at 1, Ex. 11 to Mot. Partial Summ. J., ECF No. 19-11).
- $0.00 of reimbursement against $4,240 billed to Dr. Fazzini. (First Fazzini EOR at 2, Ex. 26 to Mot. Partial Summ. J., ECF No. 19-26); (Third Fazzini EOR at 1, Ex. 35 to Mot. Partial Summ. J., ECF No. 19-35).[5]
- $615.34 of reimbursement against $2,750 billed to Dr. Gephardt. (Gephardt EOR at 2, Ex. 36 to Mot. Partial Summ. J., ECF No. 19-36).
- $197.66 of reimbursement against $1,650 billed to Dr. Brady. (Brady EOR at 1, Ex. 37 to Mot. Partial Summ. J., ECF No. 19-37).

(*See* Mot. Partial Summ. J. 5:7–8:19).

---

[4] A second EOR reflecting $0.00 in reimbursement against $1,888 billed to Henderson Hospital Emergency Room for the same visit was sent by Garrison on November 20, 2023. (Second Henderson EOR at 1, Ex. 17 to Mot. Partial Summ. J., ECF No. 19-17).

[5] Another EOR reflecting the same reimbursement for the same treatment by Dr. Fazzini was sent by Garrison in February 2025. (Second Fazzini EOR at 2, Ex. 27 to Mot. Partial Summ. J., ECF No. 19-27).

On November 5, 2025, Plaintiffs' counsel advised Garrison that Ashley had incurred additional medical expenses since the entry of default judgment, increasing the amount of past medical damages from $75,043 to $93,683. (*Id.* 8:8–15). Plaintiffs allege that they never received any payment for these additional medical damages. (*Id.* 8:20). However, Garrison contends that on February 11, 2026, two days before Plaintiffs filed their Motion for Partial Summary Judgment, it sent Plaintiffs' counsel a check for the additional medical damages in the amount of $18,640. (Resp. Mot. Partial Summ. J. 5:21–23); (Feb. 11 Payment at 2, Ex. 8 to Resp. Mot. Partial Summ. J., ECF No. 23-8).

**D. The Parties' Claims**

Plaintiffs assert the following claims against Garrison: (1) breach of contract, (2) bad faith, including both contractual and tortious violations of the implied covenant of good faith and fair dealing, (3) breach of fiduciary duty, (4) violation of Nevada's Unfair Claims Practices Act and Nevada Trade Practices, (5) negligence, (6) negligent hiring, training, and supervision, and (7) declaratory relief. (Compl. ¶¶ 18–109). In its Answer, Garrison asserts two counterclaims for declaratory relief against Plaintiffs, seeking findings from the Court that (1) under the Policy, Garrison owes no duty or obligation to indemnify its insured or any third parties in connection with the underlying Sanchez lawsuit for any amount in excess of the Policy's limits, and (2) Ashley breached the terms of the Policy and coverage for the accident at issues is voided. (Ans. 20:15–17, 21:24–26).

## II. LEGAL STANDARD

**A. Motion to Dismiss**

Dismissal is appropriate under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all

factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to FRCP 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)).

**B. Motion for Summary Judgment**

FRCP 56 provides for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine

issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (quoting *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89) However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Plaintiffs now move to dismiss both of Garrison's counterclaims under FRCP 12(b)(6), (*see generally* Mot. Dismiss, ECF No. 10), and separately move for either (1) the entry of an Order to Show Cause against Garrison regarding why it should not be held in civil contempt for

failing to pay benefits due under its Medpay policy or (2) entry of summary judgment against Garrison on Plaintiffs' claims for breach of contract, bad faith, and statutory violations of the Nevada Unfair Claims Practices Act for failure to pay Medpay benefits. (Mot. Partial Summ. J. 2:11–18). The Court addresses Plaintiffs' motions in turn.

**A. Motion to Dismiss Garrison's Counterclaims**

Plaintiffs move to dismiss both of Garrison's counterclaims for declaratory relief, which seek a finding from that Court that (1) under the Policy, Garrison owes no duty or obligation to indemnify its insured or any third parties in connection with the underlying Sanchez lawsuit for any amount in excess of the Policy's limits, and (2) Ashley breached the terms of the Policy and coverage for the accident at issues is voided. (Ans. 20:15–17, 21:24–26). Plaintiffs argue that both counterclaims should be dismissed under FRCP 12(b)(6) because they are conclusory, redundant of other issues presented by Plaintiffs' Complaint and Garrison's affirmative defenses, and do not warrant the exercise of the Court's jurisdiction under *Brillhardt v. Excess Ins. Co.*, 316 U.S. 491 (1942), and its progeny. (*See generally* Mot. Dismiss). In response, Garrison contends that its counterclaims are not duplicative of its affirmative defenses, and that the Court should exercise jurisdiction over them under *Brillhardt*. (*See generally* Resp. Mot. Dismiss, ECF No. 11).

The Federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "Act does not grant litigants an absolute right to a legal determination." *U.S. v. Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985). "Rather, the decision to grant declaratory relief rests within a district court's discretion." *Allstate Ins. Co. v. Bos*, No. CV 12-1024 PSG (RZx), 2012 WL 12930703, at *1 (N.D. Cal. Feb. 17, 2012). "Declaratory relief should be denied when it will neither serve

a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *Washington*, 759 F.2d at 1357. Several courts in this Circuit have concluded that counterclaims for declaratory relief are improper if repetitious of issues already before the court via the complaint or affirmative defenses. *Niantic, Inc. v. Global++*, No. 19-cv-03425-JST, 2020 WL 1548465, at *3 (N.D. Cal. Jan 30, 2020) (citing *Ketab Corp. v. Mesriani & Assocs.*, No. 2:14-cv-07241-RSWL (MRW), 2015 WL 8022874, at *9 (C.D. Cal. Dec. 4, 2015) (collecting cases)).

Plaintiffs argue that Garrison's counterclaims raise the same issues as Plaintiffs' Complaint and Garrison's affirmative defenses and should therefore be dismissed. (Mot. Dismiss 8:5–20). The Court finds this argument persuasive. Garrison's first counterclaim seeks a finding that it has no obligation to indemnify Plaintiff in an amount in excess of the Policy's limits. (Ans. 20:15–17). This issue—whether Garrison must pay the full damages amount awarded by the underlying state court judgment or only an amount equal to the Policy's limits—lies at the heart of Plaintiffs' claim for breach of contract. (*See* Compl. ¶¶ 17, 24–30). Further, Garrison's fourth affirmative defense provides that "Plaintiffs' claims for relief are barred or reduced by the terms, provisions, limitations, and exclusions in the Policy." (Ans. 10:24–25). Similarly, Garrison's second counterclaim, which seeks a finding that Ashley breached the terms of the Policy and thus voided her coverage, mirrors several of Garrison's affirmative defenses. (*See* Ans. 10:26–11:4) ("Plaintiffs claims are barred by her failure to comply with one or more conditions precedent to recovery . . . including her duty to cooperate under the Policy.").

In adjudicating the main action, the Court must determine (1) whether Plaintiff breached provisions of the Policy and thus voided her coverage, and (2) whether Garrison has an obligation to indemnify Plaintiff for the entire damages amount awarded by the state court

default judgment. Accordingly, the issues asserted in the counterclaims will be disposed of by Plaintiffs' claims, and both will be rendered moot. *See Sw. Windpower, Inc. v. Imperial Elec., Inc.*, No. CV-10-8200-SMM, 2011 WL 486089, at *3 (D. Ariz. Feb. 4, 2011); *see also Vanguard Dealer Servs., LLC v. Cervantes*, No. 2:21-cv-01121-JAD-EJY, 2023 WL 3852404, at *3 (D. Nev. June 6, 2023). This remains true regardless of any amendment Garrison could make with respect to either Counterclaim. The Court thus GRANTS Plaintiffs' Motion to Dismiss Garrison's Counterclaims without leave to amend.

**B. Motion for Order to Show Cause**

The Court next turns to Plaintiffs' Motion for Order to Show Cause. Plaintiffs seek an order from this Court requiring Garrison to show cause why it has not complied with the default judgment issued in the underlying state court case. (Mot. Order Show Cause 12:14–19, ECF No. 18). Specifically, Plaintiffs contend that under the default judgment, Garrison is required to tender $1,091,043 in medical payments, the full amount of medical damages awarded by the default judgment. (*Id.* 21:13–18). Moreover, should Garrison be unable to satisfy its burden in responding to the order to show cause, Plaintiffs request that the Court hold Garrison in civil contempt. (*Id.* 12:14–16); (Reply Mot. Order Show Cause 2:17–19, ECF No. 24). In response, Garrison argues that an order to show cause is unwarranted because it was not a party to the underlying state court action, and no order issued by the state court or by this Court is directed to Garrison. (Resp. Mot. Order Show Cause 7:4–7, ECF No. 22).

Civil contempt is appropriate only when a party fails to comply with a court order that is both specific and definite. *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) (citing *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984)). Here, as Garrison points out, the default judgment rendered by the state court does not name Garrison nor require Garrison to tender the full amount of medical damages to Plaintiffs. (*See* Default J. at 1–2, Ex. 1 to Mot. Order Show Cause, ECF No. 18-1). While Garrison may have an obligation to tender payment

of the damages awarded by the default judgment to Plaintiffs under Nevada law, that question is best resolved through Plaintiffs' Motion for Partial Summary Judgment. In the absence of specific language in the default judgment requiring Garrison to pay Plaintiffs, the Court declines to enter an Order to Show Cause threatening civil contempt for Garrison's failure to do the same. Accordingly, the Court DENIES Plaintiffs' Motion for Order to Show Cause.

**C. Motion for Partial Summary Judgment**

The Court next turns to Plaintiff's Motion for Partial Summary Judgment, in which Plaintiffs seek summary judgment with respect to their claims for (1) breach of contract, (2) bad faith, including both tortious and contractual breach of the implied covenant of good faith and fair dealing, and (3) violation of Nevada's Unfair Claims Practices Act and Nevada Trade Practices. (Partial Mot. Summ. J. 21:21–22:3, ECF No. 19). The scope of Plaintiffs' Partial Motion for Summary Judgment is narrow—they seek summary judgment on these claims only with respect to Garrison's alleged failure to pay the full amount of medical damages awarded by the default judgment. (*Id.* 22:3). The Court analyzes each of Plaintiffs' claims in turn.

**1. Breach of Contract**

Plaintiffs have the initial burden of establishing the absence of a genuine issue of material fact, meaning they must come forward with evidence which would entitle them to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480. Here, Plaintiffs contend that because they notified Garrison of the state court case against Sanchez nearly eight months prior to the entry of default judgment, Garrison had both notice and an opportunity to intervene and is thus bound by the default judgment. Plaintiffs further argue that because the state court awarded Ashley Howland $1,091,043 in medical damages, they effectively made the determination that those expenses reflect "medically necessary and appropriate medical services" under the Policy. (Mot. Partial Summ. J. 22:7–18). Therefore, Plaintiffs argue that they are entitled to full payment of the $1,091,043 in medical

damages, or alternatively, $200,000, the medical payment coverage limit under the Policy. (*Id.*).

Under Nevada law, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1139, 1145 (D. Nev. 2017) (quotation omitted). An insurance company "is bound by the result of an action between its insured and an uninsured motorist when the carrier has notice of the action but elects not to intervene." *State Farm Mut. Auto. Ins. v. Wharton*, 495 P.2d 359, 362 n.7 (Nev. 1972) (first citing *State Farm Mut. Auto. v. Christensen*, 494 P.2d 552 (Nev. 1972); and then citing *Allstate Ins. Co. v. Pietrosh*, 454 P.2d 106 (Nev. 1969)). Specifically, an insurer must have (1) notice of the action and (2) an opportunity to intervene. *Estate of LoMastro ex rel. LoMastro v. Am. Fam. Ins. Grp.*, 195 P.3d 339, 346 (Nev. 2008). In Nevada, insurance policies are treated like other contracts. *Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (Nev. 2018) (citing *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014)). Accordingly, the general rule in a breach of contract action is that the injured party may be awarded expectancy damages in the amount of:

> (a) The loss in value to the plaintiff of the other party's performance caused by its failure or deficiency, plus
> (b) Any other loss, including incidental or consequential loss, caused by the beach, less
> (c) Any cost or other loss that the plaintiff has avoided by not having to perform.

*Id.* (citing Restatement (Second) of Contracts § 347 (Am. Law. Inst. 1981)).

**a. Garrison is Bound by the Default Judgment**

First, Plaintiffs have shown that Garrison is bound by the default judgment entered against Sanchez. It is undisputed that Plaintiffs first notified Garrison of the state court action against Sanchez in September 2023. (Sept. 18 Status Update at 2–3, Ex. 16 to Mot. Partial

Summm. J.). It is also undisputed that default judgment against Sanchez was entered by the state court on May 16, 2024. (Default J., Ex. 1 to Mot. Partial Summ. J.). While default had been entered against Sanchez on August 2, 2023, before Plaintiff notified Garrison of the action, the Court concludes that Garrison still had an opportunity to intervene. (Entry of Default, Case No. A-23-872614-C, ECF No. 5).

In *LoMastro*, the Nevada Supreme Court explained the difference between an entry of default and an entry of default judgment. Because the entry of default acts as an admission by the defending party of all material claims made in the complaint, it therefore resolves issues of liability and causation, but not damages. *Estate of LoMastro*, 195 P.3d at 345. A third-party can still intervene after the entry of a default but is limited to contesting the amount of damages or moving to set aside the default. *Id.* at 346. Conversely, a third-party has no opportunity to intervene after the entry of a default judgment. *See Lopez v. Merit Ins. Co.*, 853 P.2d 1266, 1267–68 (Nev. 1993).[6]

Here, while Garrison was notified of the action against Sanchez after default had been entered, it nonetheless could have intervened to contest damages or move to set aside the default. Accordingly, because Garrison had both notice and an opportunity to intervene, Plaintiff has shown that Garrison is bound by the default judgment. *Wharton*, 495 P.2d at 362 n.7.

**b. Amount of Medical Payments Owed**

Second, Plaintiffs argue that because Garrison is bound by the default judgment, it must tender the full amount of medical damages awarded by the judgment, or alternatively, an amount equal to the Policy's medical payment coverage limit. The Policy provides that Garrison will pay for "medically necessary and appropriate medical services" that are "incurred

[6] The Nevada Supreme Court has only found that an insurer is not bound by a default judgment where they were only notified of the underlying action after entry of default *judgment*. *See Beccera v. One Beacon Ins. Grp.*, No. 50708, 2009 WL 3426754, at *2 (Nev. Oct. 8, 2009).

for services rendered within three years" from the date of an accident. (Policy at 35, Ex. 1 to Resp. Mot. Partial Summ. J., ECF No. 23-1). The default judgment against Sanchez awarded Plaintiffs $75,043 in past medical damages, and $1,016,000 in future medical damages. (Default J. at 1, Ex. 1 to Mot. Partial Summ. J.). Under the Policy, Garrison must only pay Plaintiffs for medical expenses already "incurred for services rendered," or *past* medical expenses. (Policy at 35, Ex. 1 to Resp. Mot. Partial Summ. J.). Plaintiffs argue that Garrison must still pay the full amount of medical damages awarded because (1) the default judgment is consequential to Garrison's breach, (Mot. Partial Summ. J. 13:4–10 (citing *Andrew*, 432 P.3d at 186)), and (2) the default judgment reflects a determination by the state court that the full $1,091,043 in medical expenses accounts for "medically necessary and appropriate medical services." (*Id.* 22:4–18).

Here, as Garrison explains, Plaintiffs have failed to show entitlement to the full panoply of medical damages awarded by the default judgment. In each of the cases Plaintiffs cite, while the Nevada Supreme Court held that an insurer was bound by a default judgment, it also held that the insurer was only obligated to pay up to its policy limits. *See Pietrosh*, 454 P.2d at 107 (affirming district court award up to the plaintiffs' policy limit of $10,000 despite default judgment award of $21,677.50 in damages); *Christensen*, 494 P.2d at 553 (affirming district court award up to the plaintiff's policy limit). Further, Plaintiffs' reliance on *Century Sur. Co. v. Andrew* is misplaced. There, the Nevada Supreme Court awarded damages exceeding the insured's policy limits because the insurer breached its contractual duty to defend its insured in litigation brought against him. *Andrew*, 432 P.3d at 183. All damages that the insured was liable for under the default judgment were consequential to that breach, and the insured was thus entitled to recover the full amount. *Id.* at 186. Here, Garrison breached no duty to defend Plaintiffs—Plaintiffs brought the state court action against a third-party tortfeasor, not the other way around.

Moreover, even if the default judgment did reflect a determination that the $1,091,043 in medical damages accounted for "medically necessary and appropriate medical services," the Policy nonetheless entitles Plaintiffs only to payment of *past* medical expenses. (Policy at 35, Ex. 1 to Resp. Mot. Partial Summ. J.). Indeed, Garrison complied with the terms of the Policy and tendered the $75,043 in past medical damages awarded by the default judgment, plus an additional $18,640 in further medical expenses incurred by Plaintiffs thereafter. (*See* Apr. 28 Payment at 1, Ex. 28 to Mot. Partial Summ. J.); (Feb. 11 Payment at 2, Ex. 8 to Resp. Mot. Partial Summ. J.). As a result, Plaintiffs fail to show that Garrison breached the terms of the Policy by declining to tender more than $93,683 in medical payments.

Accordingly, the Court DENIES Plaintiff's Motion for Partial Summary Judgment on this claim. Further, given the lack of legal authority supporting Plaintiffs' argument and in the interest of judicial efficiency, the Court finds that supplemental briefing is necessary to determine whether Defendants are entitled to summary judgment on Plaintiffs' claim for breach of contract.[7]

**2. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs next argue that because Garrison failed to pay the full amount of medical damages awarded by the default judgment, they breached the implied covenant of good faith and fair dealing. (Mot. Partial Summ. J. 22:19–23:15). Nevada law implies a covenant of good faith and fair dealing in every contract. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991). In the insurance context, an insurer breaches the duty of good faith when it refuses "without proper cause to compensate its insured for a loss covered by the policy." *U.S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975). An insurer is without proper cause to deny a claim when it has an "actual or implied awareness" that no

---

[7] Both Ninth Circuit and Supreme Court precedent allow the Court to order supplemental briefing *sua sponte*. *See Warren v. C.I.R.*, 282 F.3d 1119, 1120 (9th Cir. 2020) (citing *U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 445–48 (1993)).

reasonable basis exists to deny the claim. *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986). An unreasonable delay in payment can also constitute bad faith. *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996).

Plaintiffs' argument again relies on their theory that they are entitled to the full amount of medical damages awarded by the default judgment. (*See* Mot. Partial Summ. J. 23:8–11). Because Garrison refused to tender that amount, and instead only paid Plaintiffs' past medical expenses, Plaintiffs contend that it violated the covenant of good faith and fair dealing. (*Id.*). Plaintiffs also appear to argue that Garrison acted in bad faith by delaying payment of the $75,043 in past medical expenses until well after default judgment was entered against Sanchez. (Reply Partial Mot. Summ. J. 9:1–10:10, ECF No. 25).[8] The Court concludes that Plaintiffs are not entitled to summary judgment under either theory.

First, as explained above, even though Garrison was bound by the default judgment entered against Sanchez, Plaintiffs have failed to show that they are entitled to any payment in excess of past medical expenses under the Policy. Second, the Court finds a genuine issue of material fact with respect to whether the delay in payment of past medical expenses was unreasonable. Plaintiff contends that because nearly eleven months elapsed between the entry of default judgment and Garrison's payment of past medical expenses, Garrison unreasonably delayed payment. (Mot. Partial Summ. J. 24:11–12). Garrison argues that the delay was closer to three months, given that Plaintiffs only informed Garrison that default judgment had been entered on January 9, 2025. (Resp. Partial Mot. Summ. J. 14:26–15:2). On Reply, Plaintiffs aver that Garrison should have known about the entry of default judgment well before January 2025 given its access to legal counsel and experience in the defense industry. (Reply Partial

---

[8] In the section of Plaintiffs' Complaint setting out their claim for violation of the covenant of good faith and fair dealing, Plaintiffs also argue that Garrison (1) failed to timely investigate their claim, and (2) improperly closed portions of Plaintiffs' claim with no basis. (Compl. ¶ 43). Given that the scope of Plaintiffs' Motion here is limited to Garrison's alleged failure to pay medical expenses, the Court does not address these additional theories here.

Mot. Summ. J. 10:19–11:14).

"[A] jury question on insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of insurer's conduct." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 197 (Nev. 1989). Here, the parties dispute the date that Garrison had notice of the default judgment. Based on the evidence provided by the parties, the Court cannot say that, as a matter of law, no reasonable juror could find that the delay in payment of past medical expenses was reasonable. Accordingly, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment on this claim.

**3. Nevada Unfair Claims Practices Act**

Finally, Plaintiffs argue that Garrison violated several provisions of the Nevada Unfair Claims Practices Act, Nev. Rev. Stat. ("NRS") 686A.310 *et seq.*, and the Nevada Administrative Code ("NAC") by tendering untimely payment for past medical expenses. (Mot. Partial Summ. J. 23:16–24:12); (Reply Mot. Partial Summ. J. 9:9–10:9).[9] Specifically, Plaintiffs contend that Garrison's payment of $75,043 in past medical expenses on April 28, 2025, was untimely given that default judgment was entered against Sanchez on May 16, 2024. (Mot. Partial Summ. J. 24:11–12). Even if the statutory clock began ticking when Plaintiffs notified Garrison of the default judgment on January 9, 2025, Plaintiffs contend that Garrison's payment was still untimely. (*Id.*).

The Nevada Unfair Claims Practices Act addresses "the manner in which an insurer handles an insured's claim whether or not the claim is denied." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010) (quoting *Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp. 2d 1090, 1095 (D. Nev. 2006)). Plaintiffs identify five

---

[9] Plaintiffs also argue that Garrison violated provisions of the Nevada Unfair Claims Practices Act by refusing to tender the entire amount of medical damages awarded by the default judgment. (Mot. Partial Summ. J. 24:1–4). Given that the Court has already concluded that Garrison was not obligated to pay Plaintiff that amount, the Court address only Plaintiffs' untimeliness theory.

provisions of NRS 686A.310 and two provisions of NAC 686A.675 that Garrison allegedly violated. The Court addresses each in turn.

**a. NRS 686A.310(1)(b)**

First, NRS 686A.310(1)(b) defines "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" as an unfair practice. Nev. Rev. Stat. 686A.310(1)(b). Plaintiffs appear to argue that Garrison either failed to acknowledge or act reasonably promptly in response to several communications relating to Plaintiffs' claim under the Policy. Plaintiffs explain that after notifying Garrison of the default judgment on January 9, 2025, and demanding full payment of medical damages awarded by the default judgment, Garrison offered to settle the claim for $100,000, the limit of uninsured motorist bodily injury coverage under the Policy. (Jan. 9 Email at 2, Ex. 22 to Mot. Partial Summ. J.); (Jan. 16 Offer, Ex. 23 to Mot. Partial Summ. J.). That response made no mention of the medical expenses sought by Plaintiffs, who sent another email to Garrison rejecting their offer and again demanding payment of medical expenses. (Jan. 23 Email at 1–2, Ex. 25 to Partial Mot. Summ. J.). Three months after that email, on April 28, 2025, Garrison tendered the $75,043 in past medical damages awarded by the default judgment. (Apr. 28 Payment at 1, Ex. 28 to Mot. Partial Summ. J.).

Thereafter, on May 19, 2025, Plaintiffs asked whether that payment could be negotiated without condition, and Plaintiffs allege that Garrison did not respond. (Mot. Partial Summ. J. 7:18–19). Rather, they contend that only after Plaintiffs informed Garrison of their intent to initiate this lawsuit—nearly five months later, on October 30, 2025—did Garrison confirm that the April 28 payment could be accepted without condition. (*Id.* 8:3–5). Garrison contests this fact, alleging that it informed Plaintiffs' counsel that the April 28 payment could be accepted without condition on April 23, 2025. (*See* Ans. ¶¶ 28–29).

For the purposes of NRS 686A.310(1)(b), the two communications implicated are (1)

Plaintiffs' January 9, 2025, request for payment of the amount awarded by the default judgment, and (2) Plaintiffs' May 19, 2025, request for clarification of whether the April 28, 2025, payment could be accepted without condition. With respect to the first communication, while the parties do not dispute any of the material facts, the Court cannot find as a matter of law that Garrison failed to respond reasonably promptly. The January 9, 2025, email did not refer *solely* to medical damages—rather, it sought the full $3,388,816 in damages awarded by the default judgment. (Jan. 9 Email at 2, Ex. 22 to Mot. Partial Summ. J.). Therefore, while Garrison's January 16, 2025, offer made no mention of medical damages, it was still an acknowledgement of Plaintiffs' communication. Nor can the Court conclude that, as a matter of law, Garrison failed to respond to the communication reasonably promptly, given that it did so seven days after receiving the communication.

With respect to the second communication, summary judgment is improper because the parties dispute a material fact. Namely, whether Garrison acknowledged that the April 28, 2025, payment could be accepted without condition before October 30, 2025. Accordingly, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment on NRS 686A.310(1)(b).

**b. NRS 686A.310(1)(e)**

Second, NRS 686A.310(1)(e) defines "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear" as an unfair practice. Nev. Rev. Stat. 686A.310(1)(e). Plaintiffs contend that Garrison violated this provision by failing to timely tender payment of the damages awarded by the default judgment after liability had become "reasonably clear." (Mot. Partial Summ. J. 23:16–24:13). The question of when liability became "reasonably clear" is again subject to a dispute of material fact—specifically, the point in time when Garrison was on notice of the default judgment. As explained above, Plaintiffs aver that Garrison should have known that default judgment was entered on May 16, 2024. (Reply Partial Mot. Summ. J. 10:19–11:14). Garrison asserts that it

was not aware of the entry of default judgment until January 9, 2025. (Ans. ¶ 21). The exact time when liability became "reasonably clear" is thus a question for the jury, and the Court DENIES Plaintiffs' Partial Motion for Summary Judgment on NRS 686A.310(1)(e).

**c. NRS 686A.310(1)(f)**

Third, NRS 686A.310(1)(f) defines "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered" as an unfair practice. Nev. Rev. Stat. 686A.310(1)(f).

Plaintiffs' argument with respect to this provision is less straightforward. They assert in conclusory fashion that Garrison's alleged delay in tendering medical payments subjects them to liability under this provision. (Reply Mot. Partial Summ. J. 9:10–13). Indeed, their Complaint contains only a formulaic recitation of the language of the provision. (Compl. ¶ 61). Notably, Plaintiffs fail to demonstrate any amounts "ultimately recovered." Even if the Court were to award Plaintiffs some of the recovery they seek in this order, it is not clear that they could bring a viable claim for violation of NRS 686A.310(1)(f) simultaneously. *See Wood v. Nautilus Ins. Co.*, No. 2:17-cv-02393-MMD-VCF, 2023 WL 8777827, at *29 (D. Nev. Dec. 18, 2023); *Heinaman v. Fid. & Gaur. Life Ins. Co.*, No. 2:14-cv-01884-RFB-GWF, 2016 WL 1367743, at *7 (D. Nev. Apr. 5, 2016).

Accordingly, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment on NRS 686A.310(1)(f).

**d. NRS 686A.310(1)(i)**

Fourth, NRS 686A.310(1)(i) defines "[f]ailing, upon payment of a claim, to inform insureds or beneficiaries of the coverage under which payment is made" as an unfair practice. Nev. Rev. Stat. 686A.310(1)(i). As with the previous provision, Plaintiffs fail to render

meaningful argument here. Neither the Complaint nor the briefing on Plaintiffs' Motion for Partial Summary Judgment assert that Garrison failed to inform Plaintiffs of the coverage under which payment was made. (*See generally* Mot. Partial Summ. J.); (Reply Mot. Partial Summ. J.). Accordingly, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment on NRS 686A.310(1)(i).

**e. NAC 686A.675(1)**

Fifth, NAC 686A.675(1) provides:

> Within 30 working days after receipt by the insurer of properly executed proofs of loss, the first-party claimant must be advised of the acceptance or denial of the claim by the insurer. No insurer may deny a claim on the grounds of a specific policy provision, condition or exclusion unless reference to that provision, condition or exclusion is included in the denial. The denial must be given to the claimant in writing and filed and retained in the insurer's claim file. If the claim of the first-party claimant is accepted, the insurer shall pay the claim within 30 days after it is accepted. If the accepted claim is not paid within that period, the insurer shall pay interest on the claim at the rate of interest established pursuant to NRS 99.040. The interest must be calculated from the date on which the payment is due until the claim is paid.

Nev. Admin. Code 686A.675(1).

Plaintiff appears to argue that Garrison violated this provision by failing to tender full payment of the medical damages awarded by the default judgment after Plaintiffs informed Garrison of the default judgment on January 9, 2025. (*See* Mot. Partial Summ. J. 24:28; (Reply Mot. Partial Summ. J. 9:9–10). However, Plaintiffs' references to these provisions are brief, and they ultimately fail to muster sufficient facts to warrant summary judgment. Indeed, Garrison did respond to Plaintiffs' January 9, 2025, email within thirty days, appearing to accept their claim and tendering the uninsured motorist bodily injury policy limit of $100,000 the same day. (Jan. 16 Offer, Ex. 23 to Mot. Partial Summ. J.).

Accordingly, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment on NAC 686A.675(1).

**f. NAC 686A.675(7)**

Finally, NAC 686A.675(7) provides that "[e]xcept for a claim involving health insurance, any case involving a claim in which there is a dispute over any portion of the insurance policy coverage, payment for the portion or portions not in dispute must be made notwithstanding the existence of the dispute where payment can be made without prejudice to any interested party." Nev. Admin. Code 686A.675(7).

Plaintiffs' arguments with respect to this provision are similarly brief, constrained to a single sentence in their Reply brief. (Reply Mot. Partial Summ. J. 9:10–13). From the evidence before the Court, it does not appear that there was a portion of the coverage not in dispute between the parties. Plaintiffs' January 9, 2025, email requested $3,388,816, (Jan. 9 Email at 2, Ex. 22 to Mot. Partial Summ. J.), and Garrison offered to settle the claim for $100,000. (Jan. 16 Offer, Ex. 23 to Mot. Partial Summ. J.). Plaintiffs rejected that offer on January 23, 2025, and appear to reiterate their demand for payment of all damages awarded by the default judgment, or at least, $200,000 in medical payments. (Jan. 23 Email at 1–2, Ex. 25 to Partial Mot. Summ. J.). As explained above, there is a dispute between the parties regarding Garrison's obligation to pay only past medical expenses or past *and* future expenses—to the extent that Ashley Howland's past medical damages were not in dispute, Garrison tendered that amount on April 28, 2025. (Apr. 28 Payment at 1, Ex. 28 to Mot. Partial Summ. J.). Plaintiff has thus failed to present evidence entitling it to summary judgment at this stage.

Accordingly, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment on NAC 686A.675(7).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Dismiss, (ECF No. 10), is **GRANTED**.

///

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Order to Show Cause, (ECF No. 18), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 19), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties must brief whether Defendant is entitled to summary judgment on Plaintiffs' claim for breach of contract. Defendant must file a supplemental brief, not to exceed 10 pages, no later than 30 days from the date of this Order. Plaintiff must file a response, not to exceed 10 pages, no later than 14 days following the filing of Defendant's supplemental brief.

**DATED** this 18 day of September, 2026.

___________________________
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT